Filed 1/26/23  P. v. Palacios CA4/2
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074054 |
| v. | (Super.Ct.No. FVA04210) |
| ALEXANDER PALACIOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Knish, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, Scott C. Taylor, and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

In 1995, a jury convicted defendant and appellant Alexander Palacios of first degree murder (Pen. Code,[1] § 187, subd. (a)) and found true the allegation that a principal was armed with a firearm during the commission of the murder (§12022, subd. (a)(2)).

In 2019, defendant filed a petition to vacate his murder conviction and for resentencing under section 1172.6 (formerly section 1170.95).[2] The trial court denied the petition, concluding defendant was prosecuted as a direct aider and abettor.

Defendant appealed that ruling, arguing the trial court erred in summarily denying his petition because he established a prima facie case entitling him to a full evidentiary hearing pursuant to section 1172.6. In our original opinion, we concluded defendant's record of conviction showed that he directly aided and abetted in the murder and therefore affirmed the denial of defendant's petition.

Defendant petitioned the California Supreme Court for review, and following the Supreme Court's opinion in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the matter was remanded to us with directions to vacate our original opinion and reconsider the matter in light of *Lewis*. We vacated our original decision and provided the parties the

---

[1] All future statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We cite to section 1172.6 for ease of reference unless otherwise indicated.

opportunity to file a supplemental brief. Having reconsidered defendant's appeal in light of *Lewis*, we continue to affirm the order denying defendant's section 1172.6 petition.

II

FACTUAL AND PROCEDURAL BACKGROUND[3]

A. *Factual Background*

On May 1, 1995, the Peralta Family lived on Valencia Street in Fontana. The family included Kathy Velasquez and her three children, Arthur Peralta (age 16), Valerie Peralta (age 14), and George Peralta (age 10). Roger Coffman (age 16) also lived with them. Down the street, Albert Zamora lived in an apartment complex. Zamora had moved to Fontana from West Covina where he was friends with defendant, George Maldonado (age 18), Lewis Pham (age 16), Harry Nabeshima (age 18), and others. The group referred to themselves as OSK, or Old School Krew.[4]

Prior to May 1, 1995, Maldonado visited Zamora in Fontana. On May 1, Maldonado and Zamora tried to rob Roger Coffman. They threatened him with a knife, chasing after him as he ran to the Peralta house. At the house, Zamora and Maldonado attempted to force their way inside. Arthur Peralta pushed them out. Also present were

---

[3] The factual background is taken from this court's nonpublished opinion in defendant's direct prior appeal, case No. E017475. (*People v. Palacios* (Oct. 20, 1997, E017475) [nonpub. opn.]) We took judicial notice of the nonpublished opinion in case No. E017475; a copy of the opinion is attached to defendant's January 27, 2020, request for judicial notice as attachment A. (Evid. Code, § 452, subd. (d).)

[4] In response to a pretrial motion, the trial court ordered the parties not to refer to "gangs," but did permit the parties to refer to the group or association to which defendant belonged.

3

Chester Howard, Haley Stockdale, Michael Moorer, Zamora's sister, Zamora's mother, and some of her friends. After Zamora and Maldonado kicked down the front door to the Peralta house, Arthur Peralta shot Maldonado in the neck. The wound was not fatal.

Soon after defendant heard that Maldonado had been shot, he (defendant) called Pham to talk about the shooting. Defendant was angry. He drove a gray Toyota minivan to Nabeshima's house to convey the news of the shooting and his desire to get even with Arthur Peralta. Defendant tried to get Nabeshima to go with him (defendant), but Nabeshima refused to go. Nabeshima was afraid of defendant and Pham. Defendant told Nabeshima to call Pham and tell him to be ready and to have his gun ready. Defendant left, saying that he was going to Pham's house.

Nabeshima called Pham who indicated that he had spoken with defendant. Pham was very angry. He stated that he was going to take care of Arthur Peralta. He had a .380-caliber gun. Nabeshima said that he did not want anything to do with it. However, he conveyed defendant's message that he was coming to get Pham and that Pham should get his gun and be ready.

Anticipating trouble in return for the shooting of Maldonado, Velasquez asked her friend, Jenny Gomez, to come and pick up the children and take them to Moreno Valley for safekeeping. Gomez went with Velasquez and Valerie Peralta to take Arthur Peralta to the police station where he surrendered himself to the police. The Peraltas returned from the police station after 10 p.m. Gomez, her cousin Kathy Guerrero, Coffman, George Peralta, and Velasquez were all in the living room in the front part of the house.

4

Valerie Peralta was in the den with her boyfriend, Robert Kalo White (age 14). They had turned off most of the lights because they anticipated trouble. The only lights on were the kitchen lights.

Defendant and Pham drove to the Peralta's house. As they approached, they turned off the headlights of the van. One of the men, wearing dark clothes, quickly walked up to the darkened house. He returned to the van, then both Pham and defendant quickly came back to the house. They squatted down at the knees while running. Gomez and Coffman saw the men approaching the house and ushered everyone into a front bedroom to hide. Gomez, her cousin, and Velasquez locked themselves in the bathroom and called the police from a cordless phone. They were not able to warn Valerie Peralta or White because they could not safely walk through the lighted kitchen to get to them.

The next door neighbor, Patricia Castanaza, heard someone at the Peralta's back door say in Spanish, "'here, here it is.'" She was aware of the shooting of Maldonado and was expecting trouble.

Valerie Peralta and White heard a knock on the kitchen door. As Valerie started to get up to answer it, White pushed her down and went instead. Someone outside asked if Arthur Peralta was there. White replied that he was not. A few seconds later two gunshots were fired through the window portion of the door. White was struck in the chest by one of the shots and died a short time later.

Upon hearing the shots, Castanaza went to the floor and crawled to her children's room to protect them. She saw a man, with many of the same characteristics as

5

defendant, run across the yard in front of her house and jump into a gray van, which had its engine running with the lights off.

A few days later, Nabeshima, Maldonado, Pham, and other members of OSK met outside a video store in West Covina. Pham bragged about shooting Arthur Peralta. The group agreed that the members would each tell a false story implicating a fictitious person named "Mark," who would be described as a member of B & G, a West Covina Filipino gang, as the shooter. They decided to use the nickname "Dopey" for the fictional shooter—similar to Pham's nickname of Dope.

Nabeshima initially went along with the gang and lied to the police. He picked a picture of a boy name Mark Zamala out of a yearbook. However, after the police told Nabeshima that they knew he was lying and that he could be prosecuted for his lies, he decided to tell the truth. He admitted that the story involving "Mark" was false, and implicated defendant and Pham as the persons who had really gone to Fontana and who were actually involved in the shooting of White.

On May 24, 1995, Pham was taken into the police station for questioning. During the interrogation, Pham stated that he had gone to the Peralta house in a van and had a .380 handgun with him. Pham stated that he had knocked on the door and asked for Arthur; however, the person at the door stated that Arthur was not there. Pham stated that he fired two shots through the glass door, and subsequently gave the gun to a friend who lived in Los Angeles County. The gun was recovered by the police and tested; however,

6

the test results were inconclusive as to whether or not the gun recovered had actually fired the bullets that killed White.

At trial Gomez said that defendant fit the description of the person she saw at the Peralta house that night because he had the same color of skin, same height and body structure. The facial features and complexion looked like him. On the night of the murder, Castanaza told the police that she did not see anything because she was afraid of retaliation. Later, she told the police that she had seen a Hispanic or very light skinned Black man running from the scene. She was shown three photo lineups with Black men; however, she did not pick any of those as the perpetrator. Castanaza picked defendant out of a separate photo lineup. She identified him at the preliminary hearing. Although she did not definitively identify him at trial as the perpetrator, she did testify that he shared all of the characteristics of the person she saw running away from the murder.

Coffman told the police that he thought the assailants were Black. Valerie Peralta told the police that the voice at the door sounded like Chester Howard's voice.

Defendant presented no affirmative defense. Instead, he argued that this was a case of mistaken identification; that there was simply not enough evidence to place him at the scene of the murder.

B. *Procedural Background*

On September 14, 1995, a jury convicted defendant of first degree murder (§ 187, subd. (a)) and found true the allegation that a principal was armed with a firearm during the commission of the murder (§12022, subd. (a)(2)). Defendant was sentenced to an

7

indeterminate term of 25 years to life with the possibility of parole on the murder charge, with a consecutive one-year term on the firearm allegation.

On October 20, 1997, we affirmed the judgment. In doing so, we rejected defendant's argument that there was insufficient evidence to prove the killing of White was a natural and probable consequence of the attempted murder of Arthur Peralta. We also disagreed with defendant's contention that if Pham mistakenly believed he shot Arthur Peralta, then the transferred intent doctrine, not the natural and probable consequences doctrine, applies to assess liability. In addition, we rejected all of defendant's instructional error claims with the exception of one, finding the error to be harmless beyond a reasonable doubt. We also disagreed with defendant's argument that the natural and probable consequences doctrine violates the separation of powers doctrine.

On January 1, 2019, Senate Bill No. 1437 became effective, which amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder. (See Stats. 2018, ch. 1015, § 1, subd. (f).) (2017-2018 Reg. Sess.) Senate Bill No. 1437 also added former section 1170.95 (now section 1172.6), which created a procedure for offenders previously convicted of murder to seek retroactive relief if they could no longer be convicted of murder under the new law. (Stats. 2018, ch. 1015, § 4.)

On January 4, 2019, defendant in propria persona filed a petition for resentencing pursuant to former section 1170.95, requesting that his murder conviction be vacated based on changes to sections 188 and 189, as amended by Senate Bill No. 1437. The trial

8

court thereafter appointed counsel to represent defendant, and the People filed opposition to defendant's petition. The People argued that defendant failed to make a prima facie showing he falls within the provisions of former section 1170.95, and thus requested the court deny defendant's request for relief.

The trial court heard the petition on August 22 and September 9, 2019. The court denied the petition for resentencing, finding defendant had not set forth a prima facie case for relief. After analyzing defendant's record of conviction, including the jury instructions and our opinion from defendant's direct appeal, the court explained the case was not prosecuted under a felony-murder theory but "an aiding and abetting of an attempted murder that led to a murder of someone else, and so this law doesn't apply to [defendant]."

On November 5, 2019, defendant timely appealed. We affirmed, and our Supreme Court granted review, holding the case for decision pending resolution of *Lewis*, *supra*, 11 Cal.5th 952. Thereafter, the Supreme Court remanded the case with directions to vacate our opinion and to reconsider the cause in light of *Lewis*.

We vacated our opinion and allowed the parties to file a supplemental brief, with which the parties have now supplied us.[5] Defendant again argues for reversal, but the People argue for affirmance.

---

[5] The People have also filed a request for this court to take judicial notice of the records from defendant's 1997 direct appeal in case No. E017475, which include the verdict forms and jury instructions. Pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of the record of conviction from case No. E017475.

9

III

DISCUSSION

Defendant contends the matter should be remanded under *Lewis* because the trial court erred in relying solely on this court's prior nonpublished opinion from his direct appeal and the court engaged in impermissible factfinding. He further argues that any error was not harmless. The People respond that under *Lewis*, the trial court properly denied defendant's petition without issuing an order to show cause because the record of conviction unequivocally shows defendant acted with an intent to kill, thereby precluding him from making a prima facie case for relief.

A. *Legal Background*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 846-847 (*Gentile*); see Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature accomplished this by amending sections 188 and 189.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.)

10

Section 189, subdivision (e), now limits the circumstances under which a person may be convicted of felony murder:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2."  (Stats. 2018, ch. 1015, § 3.)

Effective January 1, 2022, Senate Bill No. 775 expanded eligibility for relief to include individuals convicted of "attempted murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime."  (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2; Legis. Counsel's Dig., Sen. Bill No. 775 (2020-2021 Reg. Sess.).)  But it did not expand eligibility for relief pursuant to section 1172.6 to one who directly aids and abets another who commits murder or attempted murder.

Senate Bill No. 1437 also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief if they could no longer be convicted of murder under the new law. (§ 1172.6, subd. (a); *Gentile*, *supra*, 10 Cal.5th at p. 843; *Lewis*, *supra*, 11 Cal.5th at

11

p. 959; *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019 . . . .'" (*Strong*, at p. 708, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid*.)

In *Lewis*, *supra*, 11 Cal.5th 952, our Supreme Court explained the trial court's role in deciding a section 1172.6 petition: Petitioners who request counsel "are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . ." (*Id*. at p. 957.)[6] "[O]nly after the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'" (*Ibid*., italics omitted; see *id*. at p. 966 ["a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes [its] prima facie determination"].) The court's "prima facie inquiry . . . is limited. . . . '"[T]he court takes petitioner's factual

---

**6** In Senate Bill No. 775, the Legislature amended the language of section 1172.6, codifying *Lewis*, *supra*, 11 Cal.5th 952, expanding the scope of the petitioning process and clarifying some of the procedural requirements. (Stats. 2021, ch. 551, § 2.)

12

allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Id*. at p. 971.) Importantly, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972.) The court further concluded that a trial court's failure to follow the procedures enacted in section 1172.6 is analyzed for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, at pp. 973-974.) Under this standard, we ask whether it is reasonably probable defendant would have obtained a more favorable outcome if counsel proper procedures had been followed. (*Id*. at p. 974.)

If a petitioner has made a prima facie showing of entitlement to relief, "'the court shall issue an order to show cause.'" (*Strong*, *supra*, 13 Cal.5th at p. 708.) Once the court determines that a defendant has made a prima facie showing, it "must [then] hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437. [Citation.] 'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior

13

conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*Strong*, at p. 709; accord, *Lewis*, *supra*, 11 Cal.5th at p. 960.) "Senate Bill [No.] 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life . . . .'" (*Strong*, at p. 710.)

B. *Standard of Review*

In this case, the trial court denied defendant's petition at the prima facie stage under section 1172.6, subdivision (c). A denial at this stage is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 960.) This is a purely legal conclusion, which we review de novo. (See *id*. at p. 961.)

C. *Analysis*

The trial court here properly relied on defendant's record of conviction, including the jury instructions, to discern defendant's ineligibility as a matter of law at the prima facie stage. As our Supreme Court has stated, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1172.6,] subdivision (c)," but cannot "engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

14

The trial court here did not weigh evidence or exercise any discretion. Rather, the court explained the jury instructions given at defendant's trial, the jury's findings, and this court's decision from defendant's direct appeal. Discerning what the jury found is not weighing evidence; it is determining what the factfinder found after the factfinder weighed the evidence. (See, e.g., *People v. Coley* (2022) 77 Cal.App.5th 539, 546-547 (*Coley*) [analyzing jury instructions to determine prima facie eligibility]; *People v. Garcia* (2022) 76 Cal.App.5th 887, 894-895 [same].)

Here, there is no dispute defendant was not the actual killer. However, defendant's record of conviction shows that he directly aided and abetted in the murder and that he acted with the specific intent to kill. Defendant's record of conviction demonstrates that defendant knowingly aided and encouraged Pham in the attempt to murder Arthur Peralta. In our prior opinion, we explained, "Assuming that defendant intended to kill Arthur Peralta, but not White, the jury was instructed that, in order to find defendant guilty as an aider and abettor of murder, it was required to find that defendant and Pham shared that intent. The transferred intent instruction does not alter that requirement. Moreover, the evidence was plainly sufficient for the jury to infer that defendant engaged Pham's support and both went to the Peraltas' house gunning for Arthur Peralta. Whether defendant and Pham were both mistaken that White was Arthur Peralta, or whether only Pham made the mistake, both shared the same intent—to kill Arthur Peralta—and defendant was properly liable as an aider and abettor. [Citation.]"

15

Moreover, the jury instructions given at defendant's trial did not allow defendant to be convicted based upon imputed malice but a showing of actual malice as an aider or abettor. The jury was instructed with the general rules of principals under CALJIC No. 3.00 and aiding and abetting liability pursuant to CALJIC No. 3.02, which, at the time of defendant's trial, provided: "'One who aids and abets another in the commission of a crime is not only guilty of that crime but also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted. [¶] In order to find the defendant guilty of the crime of murder as charged in Count 1 you must be satisfied beyond a reasonable doubt that (1) the crime of murder was committed and (2) that the defendant aided and abetted such crime, (3) that a co-principal in such crime committed the crime of murder, and (4) the crime of murder of Robert Kalo White was a natural and probable consequence of the attempted commission of the crime of murder of Arthur Peralta.'"

The trial court also instructed the jury regarding attempted murder being the target offense. At the time of defendant's trial, CALJIC No. 8.66 defined attempted murder. That instruction provided that the crime of attempted murder necessarily required the jury to find that the accused "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66.) And this court in defendant's direct appeal concluded the record conclusively demonstrated that the jury found defendant had "harbored express malice." Based on the record before us, there can be no question that the uncontradicted evidence established that defendant harbored

16

express malice when he went with Pham to the Peralta house. With respect to defendant's conviction of murder, the jury found that defendant committed murder in the first degree. Thus, it found that defendant harbored express malice.

While the amendment to section 188 effectively eliminated use of the natural and probable consequences doctrine to support a murder conviction, the change did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.'" (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see *People v. Chiu* (2014) 59 Cal.4th 155, 167 [a direct aider and abettor "acts with the mens rea required for first degree murder"] (*Chiu*).) Hence, a direct aider and abettor can be convicted of murder notwithstanding the amendments to sections 188 and 189, which changed nothing with regard to direct aider and abettor liability. Defendant was required to make a prima facie showing that he was not convicted as a direct aider and abettor, and thereby "'falls within the provisions of' the statute.'" (*Lewis*, *supra*, 11 Cal.5th at p. 961; § 1172.6, subds. (a)(3) & (c).) He failed to do so. The trial court therefore properly denied the petition on the basis of its finding that defendant had not established a prima facie case for relief by relying on this court's prior opinion in defendant's direct appeal.

17

In this case, the jury was presented with two theories of liability, direct aiding and abetting and natural and probable consequences. In addition, the jury was instructed as to a single target offense—attempted murder. As noted previously, the jury was also instructed with CALJIC No. 3.02, the aiding and abetting instruction. The jury was further informed that "[a]n attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done towards its commission." Even if defendant's first degree murder conviction was premised on the natural and probable consequences theory, the jury necessarily found, beyond a reasonable doubt, that when defendant acted as an aider and abettor, he did so with the specific intent to kill. When the Legislature passed Senate Bill No. 1437 it acted "'to ensure that murder liability is not imposed on a person who . . . did not act with the intent to kill[.]'" (*Lewis*, *supra*, 11 Cal.5th at p. 959.) The record shows as a matter of law that defendant directly aided and abetted Pham and that he acted with an intent to kill. He thus cannot show he is entitled to relief under section 1172.6.

*Coley*, *supra*, 77 Cal.App.5th 539 is also instructive. The defendant in *Coley* was convicted of second degree murder and attempted murder and appealed the denial of his petition for resentencing under section 1172.6. (*Coley*, at pp. 541-542.) The trial court concluded that the record of conviction showed the jury had found express malice, i.e., a specific intent to unlawfully kill, when it convicted the defendant of attempted murder, and therefore denied the petition. (*Id*. at p. 545.) The Court of Appeal affirmed, concluding that the defendant's conviction for attempted murder "demonstrates that he

18

was convicted of second degree murder with express rather than implied malice." (*Id*. at p. 547.) The court explained that the defendant was "convicted of murder based on his aiding and abetting of the same shooting that gave rise to the attempted murder conviction" and that "[t]he jury was instructed by CALCRIM No. 600 that attempted murder requires a determination that 'the defendants intended to kill that person.'" (*Ibid*.) "[B]y finding [the defendant] guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second degree murder." (*Ibid*.)

Defendant argues that the trial court violated the procedures established in section 1172.6 and *Lewis* when the court solely relied on this court's opinion from defendant's direct appeal and admitted it had "not reviewed the transcripts of the trial." Citing to a statement made by the court, namely when the court stated that "it seems that there's no other reason to go over there other than to—to try to kill Peralta" (italics omitted), defendant believes the court engaged in impermissible factfinding. We disagree.

Presuming the trial court violated some of the procedures established by section 1172.6, we find any error to be harmless for the reasons noted above. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.) The error will be deemed harmless if the record of conviction establishes as a matter of law that defendant was convicted under a theory of murder that remains valid after Senate Bill No. 1437. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677-678.) The jury's verdict and the jury instructions show as a matter

19

of law that defendant was convicted as a direct aider and abettor, and therefore was convicted under a theory of murder that still remains valid after Senate Bill No. 1437.

Defendant also asserts that he is entitled to a full evidentiary hearing under section 1172.6. Defendant has already challenged the sufficiency of the evidence in support of his conviction as an aider and abettor in his direct appeal and lost. As discussed above, nothing in the amendments to sections 188 and 189 altered the criminal liability of direct aiders and abettors of murder. Such persons may still be convicted of first degree premeditated murder based on their own knowledge of the perpetrator's unlawful purpose and their own intent to commit, encourage, or facilitate the commission of the murder. (*Chiu*, *supra*, 59 Cal.4th at p. 167 [direct aider and abettor "acts with the mens rea required for first degree murder"].) Defendant cannot challenge the sufficiency of the evidence supporting his first degree murder conviction as a direct aider and abettor in an appeal from the denial of his section 1172.6 petition.

In sum, the allegations in the petition that defendant "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019," a statutorily mandated prerequisite for a section 1172.6, are contradicted by the record of conviction. (§ 1172.6, subd. (a).) Defendant is thus ineligible for relief under section 1172.6 as a matter of law. We conclude the trial court properly denied defendant's section 1172.6 petition.

IV

DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


SLOUGH
J.


FIELDS
J.